ORDWAY & McGUIRE *v.* M. E. MONTGOMERY *et al.*

1. ASSIGNMENT. *Construction of Act of* 1881, *ch.* 121. The act of 1881, ch. 121, which makes void " any mortgage, deed in trust, or other conveyance of a portion of the debtor's property for the benefit of any particular creditor or creditors, made within three months preceding a general assignment and in contemplation of making a general assignment," does not extend to a conveyance of land by a vendor to a third person under a parol contract made with the debtor in his own name, where the debtor received from such third person the money with which he was enabled to pay for the land under an agreement to make the purchase for such third person.

2. SAME. *Same. Bona fide purchaser.* Nor does the act extend to a *bona fide* sale of his goods by a failing debtor to one of his creditors in part consideration for the creditor's debt.

FROM WILLIAMSON.

Appeal from the Chancery Court at Franklin. W. S. FLEMING, Ch.

THOMAS & HOUSE for complainants.

B. BOND for defendants.

COOPER, J., delivered the opinion of the court.

Bill to set aside a sale of a stock of goods and the conveyance of a lot and storehouse as fraudulent because made to hinder and delay creditors, and, if mistaken in this, to have the transactions declared void as attempts to give an illegal preference to one creditor contrary to the provisions of the act of 1881, ch. 121. The chancellor rendered a decree on both grounds against the complainants, and they appealed.

It is conceded that the complainants have failed to show actual fraud as charged, and the argument in their behalf is rested on the act of 1881. The second section of that act is: "That any mortgage, deed in trust, or other conveyance of a portion of a debtor's property for the benefit of any particular creditor or creditors, made within three months preceding a general assignment and in contemplation of making a general assignment, shall be void in the event a general assignment is made within three months thereafter, and the property conveyed by such conveyance shall be shared ratably by all creditors just as that embraced in general assignments."

In August, 1880, the defendant. Montgomery bought from J. M. & W. W. McConnico a lot with a storehouse thereon, and a stock of goods at Thompson's Station in Williamson county. The realty was valued at $1,000, and the stock of goods at $1,400. Montgomery paid cash for the goods, and gave notes, payable at 3, 6 and 9 months, for the land, which he paid as they matured. About the time of the pur-

chase, Montgomery received from his mother-in-law and co-defendant M. E. Gollithan $2,000, which had been paid to her upon the death of her husband by some Benefil Order of which he was a member. Montgomery and Gollithan both say in their answer, and he testifies that $1,000 of the money was to be invested in the lot and storehouse, for Gollithan, and he was to pay her rent therefor at ten dollars a month. The other $1,000 were loaned to him on call. The debt of Montgomery to the complainants was created by purchases made to replenish his stock. On November 10, 1881, Montgomery sold to his co-defendant Gollithan his stock of goods for $1,150, which sum was their full value, the consideration being the debt of $1,000 due to her for loaned money, he having paid her the interest, and her note for $150. On November 14, 1881, the McConnicos conveyed the lot and storehouse by deed in fee to defendant Gollithan. The purchase money of this property had been paid some time before, but the conveyance was delayed because the McConnicos had mislaid the unregistered deed of their vendor. Their trade with Montgomery was in parol, but they knew nothing of the connection of Gollithan with it until they executed the deed of conveyance. On November 15, 1881, Montgomery made a general assignment to the defendant Kitch of his effects, consisting of notes and accounts including the note of Gollithan for the balance of purchase money of the goods, for the benefit of his creditors. The debts largely exceed the value of the assets. The bill was filed three days thereafter.

If, as conceded by complainants, there was no actual fraud on the part of defendant Gollithan in these transactions, and the defendant Montgomery, as he testifies and both say in their answer, received $1,000 to be invested in the lot, there can be no doubt that she had a right to take the title in her own name. There had been no previous valid contract between Montgomery and the McConnicos in relation to the land. The only writing was the deed. Although, therefore, the negotiations were made by Montgomery in his own name, and the purchase money secured by his own notes, if he made the purchase for his co-defendant, under an express agreement with her upon receiving the money, she would have a clear equity in the land which would be perfected into a legal title by the deed of conveyance of the McConnicos to her. She would thus have the legal title, and the prior equity as against the complainants, of which this court, as a court of chancery, would not under the circumstances deprive her. The case, so far as the land is concerned, would not come within the statute of 1881 at all. For the debtor never had the legal title or even an equitable interest in the land.

The sale of the stock of goods by Montgomery to his co-defendant was within three months preceding his general assignment, and, beyond doubt so far as he was concerned, in contemplation of making that general assignment. In her answer, the defendant Gollithan denies that she knew anything of the intention of Montgomery to make the general assignment, or that any necessity existed for making it, and there is no

direct evidence fixing her with notice. But the silence of her co-defendant on this point in his testimony, her failure to testify, and the circumstances tend strongly to show knowledge on her part of his financial condition. The statute itself does not seem to require notice to the creditor to call its provisions into effect. It is in the nature of a bankrupt law to the extent of those provisions. Prior to its passage, it was neither illegal nor morally wrong for a failing debtor to give a preference to a particular creditor, nor, of course, to sell him property in satisfaction of his debt. To the extent of its provisions the act of 1881 has changed the law, and the question raised by the facts of this case is whether a sale of his stock of goods by a failing merchant to one of his creditors is within the statute, the proof failing to fix the purchaser with actual fraud to hinder and delay the debtor's creditors. The answer must depend upon the comprehensiveness of the act.

The statute makes void "any mortgage, deed in trust or other conveyance of a portion of the debtor's property, for the benefit of any particular creditor or creditors," within three months, etc. The language naturally suggests two questions which were argued in the court below, and again in this court. Do the words "other conveyance" mean conveyances of the same kind as those enumerated, that is in the nature of a mortgage or deed of trust? If so, it is argued on behalf of the defendant, the words only apply to conveyances intended to secure the creditor, not to a *bona fide* sale. Does the statute only mean a "conveyance" in the

strict sense of an instrument of writing? If so, it is further argued, the transaction under consideration, which was a sale of goods without any writing would not fall within it. Perhaps, the present case may be determined without resort to verbal niceties.

The statute changes a common law rule and takes away a common law right. It is entitled to such a construction as its words, taken in their usual sense and common acceptation, may require having in view the intention of the Legislature as disclosed by the entire act. The object of the statute, expressed in its title as well as in the section quoted above, was to prevent a failing debtor from giving a preference to particular creditors by a conveyance of his property for their benefit. It therefore invalidates a general assignment giving preferences only to the extent of such preferences, and avoids altogether any mortgage, deed in trust, or "other conveyance" of a portion of the debtor's property for the benefit of any particular creditor. But it does not in terms, like the bankrupt law of the United States, extend to any payment, sale, or other disposition, "absolutely or conditionally," of the debtor's property. If it had done so, the Legislature would undoubtedly have guarded its provisions, as was done by the bankrupt law, by making the payment, sale or other diposition void if the party implicated have "reasonable cause to believe such person is insolvent," or know that the payment, sale or disposition "is made in fraud of the provisions" of the act. There are no such limitations in the statute under consideration. It does not require notice of the

intention of the debtor to make a general assignment. It avoids the transaction if the debtor have it in contemplation to make a general assignment, and do in fact make it. No creditor could receive a payment of his debt in property or make a trade with his debtor in part consideration of his debt without running the risk of having it set aside by an act of the debtor of which he might have no suspicion. "Clearly," says Mr. Justice Davis in construing the bankrupt law, "all sales are not forbidden. It would be absurd to suppose that Congress intended to set the seal of condemnation on every transaction of the bankrupt which occurred within six months of bankruptcy, without regard to its character. A policy leading to such a result would be an excellent contrivance for paralyzing business, and cannot be imputed to Congress without an express declaration to that effect. The interdiction applies to sales for a fradulent object, not to those with an honest purpose:" *Tiffany* v. *Lucas*, 15 Wall., 421.

The statute now under consideration avoids a conveyance "for the benefit" of a creditor, if made by the debtor in contemplation by him of making a general assignment, and the actual making of the assignment within three months, without reference to the good faith of the creditor. Clearly the courts cannot extend the language beyond a conveyance for the benefit of the creditor in the ordinary meaning of the words, namely as a security for his debt.. A sale of property is not said to be "for the benefit" of the purchaser, because he parts with an equivalent consid-

Ordway & McGuire *v.* Montgomery.

·eration. It cannot be supposed that a failing debtor was to be deprived of the right to sell his property in good faith, even to one of his creditors, unless the Legislature has plainly said so.

Affirm. the decree below with costs. The costs of the court below will be paid as decreed by the chancellor.

FREEMAN, J., delivered the following dissenting opinion :

I cannot agree with the conclusion reached by a majority of the court.

The object of the statute of 1881 is to prevent preferences by a failing debtor to his creditors. It renders void as against a general assignment made within the specified period, any mortgage or deed of trust, or other conveyance made for the benefit of any creditor. It is conceded a mortgage or deed of trust made to the creditor would have been within the statute. It is not, however, either these conveyances. It is a conveyance or transfer direct to the creditor, in payment and satisfaction of the debt. The question is, is this a conveyance for the benefit of the creditor within the purpose of the statute? It is a direct appropriation of the property to the discharge of the debt, and thus the creditor gets the benefit of this property to the extent of the discharge of his debt. I am unable to see how a conveyance made to a trustee, who should sell the property for the benefit of the

creditor, can be within the statute, and a conveyance of that property directly to the creditor is not. In the latter case the creditor may buy the property himself at the trustee's sale, and thus get the property appropriated to his debt, and so the result. in each case may be the same. Yet this is forbidden; but by the opinion of the majority, he has but to take the conveyance direct to himself, instead of having a trustee, and he can thus avoid the statute.

The result of the opinion is, that a failing debtor may appropriate all his property, piece by piece, or in gross, to any favored creditor or creditors, and leave the others nothing, thus practically rendering the statute nugatory. There is no case where a preference may not be given to the extent of the entire property of the debtor, if his creditors will only agree to the price he may put upon his property. There will seldom be disagreement in such cases, as to refuse to agree on the part of the creditor, will compel him to take his chances for a *pro rata* under a general assignment.

I cannot agree that this is the proper construction or meaning of the statute, because it will in practice defeat its operation entirely, except at the option of the debtor and favored creditor.

For these and other reasons that might be given, I dissent from the views of the majority.